Nathan B. EPSTEIN, M.D., et al.,

v.

Thomas P. DIMEO et al.

No. 95–686–APPEAL.

Supreme Court of Rhode Island.

May 30, 1997.

Jeffrey S. Brenner, Providence, for Plaintiff.

Michael P. DeFanti, Providence, for Defendant.

Before LEDERBERG, BOURCIER, and SHEA (ret.), JJ.

## OPINION

PER CURIAM.

This matter came before the Supreme Court on April 15, 1997, pursuant to an order directing the plaintiffs to appear and show cause why the issues raised in this appeal should not be summarily decided. The plaintiffs, Nathan B. Epstein, M.D., George Patton, Jr., Mary E. Patton, and Joseph S. Sinclair, appeal from a judgment entered in Superior Court in favor of the defendants, Thomas P. Dimeo and William P. Considine. After reviewing the memoranda submitted by the parties and after hearing their counsel in oral argument, we are of the opinion that cause has not been shown and that the issues raised by this appeal will be decided at this time.

The plaintiffs were limited partners of the South Farm Village Associates Company; defendants were general partners. The partnership was formed in order to construct and maintain a housing development in Wakefield, Rhode Island, known as South Farm Village. This housing development was the only asset of the partnership. In 1991 the general partners sought approval from the limited partners to sell the housing development. The terms of the sale were outlined in a letter dated January 23, 1991. Pursuant to the partnership agreement, the sale could take place only if the owners of 67 percent of the limited-partnership units consented to the transaction in writing (that is, ten of the fifteen limited-partnership units). An insufficient number of limited partners agreed to the sale under the terms set forth in the January 23 letter. Thereafter the terms of the offer were modified over the course of 1991, and additional consents were obtained. In February of 1993 the sale took place. Each limited partner received $30,000 in cash and an interest of $30,000 in a promissory note. The general partners received all proceeds of the sale in cash, including the proceeds from the sale of the management rights in South Farm Village.

The plaintiffs are the minority unit owners who objected to the sale of the development. They brought suit in Superior Court, alleging that the general partners had failed properly to obtain the consent of the limited partners regarding the distribution of the sale proceeds. They also claim that the general partners failed to disclose the method and the manner in which the proceeds of the sale were to be distributed.[1]

The trial justice, sitting without a jury, concluded that the consent of the limited partners had been properly obtained and the manner of distribution fully disclosed.[2] The partnership was comprised of fifteen limited-partnership units. Six of those units consented to the sale under the terms of a letter dated January 23, 1991. Over the course of the next two years the general partners modified the terms of the proposed sale to increase the cash passing to each limited partner by $10,000 per unit and correspondingly decreasing their interest in an unsecured promissory note. In response to these modifications additional limited partners consent-

---

1. Specifically, plaintiffs claimed breach of the limited-partnership agreement, breach of the Rhode Island Uniform Limited Partnership Act, G.L.1956 chapter 13 of title 7, breach of fiduciary duty, conversion of the partnership assets, and unjust enrichment by the general partners.

2. The case was submitted to a trial justice, sitting without a jury, on an agreed statement of facts.

ed to the sale, giving the general partners sufficient approval to proceed with the transaction (partners owning more than ten of the fifteen limited-partnership units consented to the transaction).

In a letter dated February 9, 1993, the general partners asked the limited partners who had withdrawn their objection to the sale to execute their consent to the January 23, 1991 letter. The letter then specified that the "monetary split" outlined in the modifications was to remain the same. Thereafter limited partners representing five and one-half units who had not yet consented to the terms outlined in the January 1991 letter issued their consent.

■ The plaintiffs contend that the accumulation of consent over the course of years was improper. They claim that the February 1993 letter should have been sent to those who originally consented to the January 1991 letter. However, the purpose of the 1993 letter was to persuade those who had approved of the modifications to the sale also to provide their consent to the other terms of the sale as outlined in the January 1991 letter. Those who had previously consented to the terms of the transaction by executing their consent to the January 1991 letter were not required to provide it to the general partners a second time. Contrary to plaintiffs' contentions, the trial justice determined that the accumulation of consent did not violate the partnership agreement or the Rhode Island Uniform Limited Partnership Act, G.L.1956 chapter 13 of title 7(act). We agree.

■ It is well settled that the findings of a trial justice sitting without a jury are entitled to great weight and will not be disturbed on appeal unless they are clearly wrong or unless material evidence has been misconceived or overlooked. *Picard v. Barry Pontiac–Buick, Inc.*, 654 A.2d 690, 693 (R.I.1995); *Jewel Co. of America, Inc. v. George*, 118 R.I. 372, 377, 373 A.2d 1200, 1203 (1977). Upon review of the record before us, we conclude that the decision of the trial justice was detailed, cogent and fully supported by the

evidence. The plaintiffs have cited no provision in either the partnership agreement or the Rhode Island Limited Partnership Act that requires simultaneous consent of the partners before partnership assets may be sold.

■ The plaintiffs also argue that the general partners failed to inform the limited partners that the sale of the management rights was a separate transaction from the sale of the project and that the general partners were to be the sole recipients of the proceeds. The trial justice properly concluded, however, that the letters sent by the general partners reasonably apprised the limited partners that they would not share in the proceeds from the sale of the management rights. The January 1991 letter to the limited partners stated that the partnership would receive $1,225,000 as a result of the sale of the project. It also stated that "[s]eparately, the general partners, as part of the transaction would be required to sell all of their management rights to the project for $250,000." A breakdown of the amounts anticipated for distribution from the sale of the project totaled $1,225,000. It seems clear that the amount to be received by the general partners from the sale of the management rights was described as an amount separate from and not part of the $1,225,000 total offer.

■ The plaintiffs' final argument on appeal is that the general partners violated the partnership agreement and § 7–13–38 of the act by structuring the sale so that the sale proceeds were paid to them in cash while the limited partners were paid partly by an unsecured note. It should be observed, however, that § 7–13–38 of the act was repealed on July 10, 1989. P.L.1989, ch. 379, § 2. Consequently that provision is not applicable to the present case. We also note that the partnership agreement may be amended by a two-thirds vote of the limited partners. The trial justice determined, and we agree, that the decision to distribute the sale proceeds to the limited partners in cash combined with a note was approved by the proper majority of

 

limited partners. Hence, to the extent that the actual distribution of sale proceeds deviated from that provided for in the partnership agreement, the limited partners ratified that deviation.

For these reasons the plaintiffs' appeal is denied and dismissed. The judgment appealed from is affirmed, and the papers of the case are remanded to the Superior Court.

WEISBERGER, C.J., and FLANDERS, J., did not participate.